UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE V. KNIGHT,<br><br>                      Petitioner,<br><br>v.<br><br>RALPH DIAZ,<br><br>                      Respondent. | Case No.: 18CV2884 AJB (BGS)<br><br>**REPORT AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Clarence V. Knight (hereinafter "Petitioner" or "Knight") is a California Prisoner proceeding pro se. Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). (ECF 1.) Pending before the Court is Respondent's Motion to Dismiss the Petition ("Motion"). (ECF 15.) Respondent argues the Petition should be dismissed because it is untimely under the applicable one-year statute of limitations, procedurally defaulted, and fails to allege a federal constitutional question. (*Id.*) Petitioner has filed an Opposition to the Motion to Dismiss ("Opposition") and Respondent a Reply. (ECF 22, 23.)

The Court submits this Report and Recommendation to the Hon. Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. The Court has considered Respondent's Motion to Dismiss, Petitioner's Opposition, the Petition, and all exhibits

and lodgments submitted by Petitioner and Respondent.  For the reasons set forth below, this Court recommends Respondent's Motion to Dismiss be **GRANTED.**

## I.  BACKGROUND[1]

### A.  Conviction and Sentence

A jury found Petitioner guilty of robbery and first-degree murder in 1979.  He was sentenced to 12-years for the robbery conviction and a consecutive 25 years-to-life for the first-degree murder conviction.

### B.  Parole Board's January 9, 2015 Decision

Petitioner received a Subsequent Parole Consideration Hearing on January 9, 2015. (Lodgment 3.)  Petitioner did not appear for the Hearing.[2]  (*Id.* at 5-7, 17.[3])  The Board recounted his background, the circumstances of his crimes, his rules violations in custody, work history, and plans if released.  (*Id.* at 8-19.)  After hearing from Petitioner's counsel, the Board found Petitioner unsuitable for parole because he posed a current risk of danger if released.[4]  (*Id.* at 20-27.)

The Board calculated his base term under the matrix at 29 years.[5]  (*Id.* at 26.)  The Board then considered how long he should remain incarcerated before another parole hearing was held and determined five years was appropriate.  (*Id.* at 26-27.)

---

[1] The procedural history is presented chronologically, although where relevant, the Court notes Respondent's categories (first and second rounds of petitions) to clarify which petitions are being summarized.

[2] Respondent's Motion asserts that Petitioner appeared before the Board for the Hearing. However, the transcript reflects that Petitioner was not personally present for the Hearing, although his counsel was present.  (Lodgment 3 at 5-7, 17.)  Petitioner refused to participate and his counsel's request for postponement was denied for lack of good cause. (*Id.*)

[3] The Court cites each lodgment's pagination rather than the CM/ECF pagination unless otherwise noted because the lodgments submitted to the Court by Respondent lack the CM/ECF pagination.

[4] That determination is not at issue in this Petition.

[5] As discussed more below, (*see infra* I.E) Board regulations at the time set out a matrix to use in determining a base term for life prisoners found suitable for parole.  Cal. Code

2

**C.     Petitioner's State Habeas Petitions**

    **1.     August 25, 2015 Petition to the Superior Court[6]**

The first state habeas petition filed by Petitioner after the January 9, 2015 Board decision was filed in Sacramento County Superior Court on August 25, 2015.  (Lodgment 4.)  It appears it was then transferred to San Diego Superior Court where a ruling was issued on December 17, 2015.  (Lodgment 5.)

In this petition, Petitioner argues that the 29-year base term the Board calculated using the matrix was causing him to serve an excessive sentence.  (Lodgment 4 at ii.)  The crux of his argument seems to be that a matrix calculation that can result in a 29-year base term for a conviction for which he received 25-to-life cannot be rational and is excessive.  (*Id.* at iii.)  He argues the 29-year base term resulted in him serving more than the total amount of time he believes he was sentenced to.  (*Id.* at i-ii, iv ("I've served the entire sentence imposed by the sentencing court" and "For my term of imprisonment has expired.")  After indicating he began serving his life sentence September 3, 1987, Petitioner asserts that his "term expired 4/2012 at 33 years." (*Id.* at i.)  He argues he

Regs., tit. 15, § 2403.  Although Petitioner was not found suitable for parole, at the time of Petitioner's January 9, 2015 hearing, the Board was also calculating base terms for prisoners even when they were found not suitable for parole.  *See In re Butler*, 4 Cal. 5th 728, 736 (2018) (discussing December 2013 settlement that "required the Board to calculate an inmate's base and adjusted base terms at the inmate's initial parole hearing (or, for inmates who already had their initial hearing, at the inmate's next scheduled parole hearing).").

[6] Respondent refers to this petition as having been constructively filed on September 27, 2015, however, the Petition is file stamped August 25, 2015 and November 5, 2015.  The Court assumes the August 25, 2015 stamp is from the Sacramento Superior Court and the November 5, 2015 stamp was applied when the petition was transferred to the San Diego Superior Court .  The San Diego Superior Court's decision denying the petition references the petition as having been filed on November 5, 2015.  (Lodgment 5 at 2.)  It appears the September 27, 2015 date Respondent references is from a proof of service to a later submission of a page that was missing from the original submission. (*See* ECF 16-4 at CM/ECF page 118 (August 25, 2015 proof of service for petition) and ECF 16-4 at CM/ECF page 125 (September 27, 2015 proof of service for 1-page notice of errata).

should have been released at 33 years and has already served more than 37 years and, with the five years until his next parole hearing, he would not be considered for release again until he served 42 years.  (*Id.* at i, iv.)  Petitioner attaches the transcript of the Subsequent Parole Board Hearing, including the Board decision, his sentencing chart from 1979, the transcript of his 1979 sentencing hearing, and a September 2, 1975 Chairman's Directive No. 75/30.

The Superior Court denied the petition on December 17, 2015.  (Lodgment 5.)  The court found the Board's decision to deny parole was not arbitrary, unreasonable, or unsupported by facts.  (*Id.* at 4.)  As to Petitioner's argument regarding the 29-year base term, the court found his incarceration beyond the 29-year base term was not excessive or cruel and unusual punishment under the Eighth Amendment given he was convicted of first-degree murder for the shooting of a woman during a robbery.  (*Id.* at 4-6.)  The court also explained that Petitioner's assertion the sentence was excessive "ignores the fact that the maximum term he could serve based on the sentence imposed by the court is a life term."  (*Id.* at 6.)

## 2. January 4, 2016 Petition to the Court of Appeal

Petitioner filed a petition with the Fourth District Court of Appeal on January 4, 2016.  (Lodgment 6 [ECF 16-6].)  He asserts largely the same arguments he raised in his petition to the Superior Court, including that his term expired in April 2012 at 33 years, that the new matrix is irrational because its application to him results in him serving at least 42 years, and that he has served the statutory maximum sentence.  (ECF 16-6 at 19-20, 22, 27-31.[7])  Again, he appears to think that his indeterminate sentence of 25 years-to-life was somehow capped at 25 years and the Board's determination of a 29-year base term that resulted in him serving more than 25 years for the first-degree murder conviction was excessive.  (*Id.* at 32 (arguing the Determinate Sentencing Law "put[] a

---

[7] The Court references the CM/ECF pagination for Lodgment 6 [ECF 16-6].

lid on the 25-to-life"), 35, 38 ("Determinate Sentencing Act enacted . . . to dispel indeterminate sentences, fix terms for parole/release . . .").) Petitioner includes the same set of attachments included with his petition to the Superior Court.

The Court of Appeal denied this petition on January 14, 2016. (Lodgment 7.) The court found Petitioner's continued incarceration was not arbitrary or unreasonable given he was convicted of first-degree murder for fatally shooting the victim during the course of a drug related robbery. (*Id.* at 2-3.) The court then directly addresses Petitioner's argument regarding the Determinate Sentencing Law, explaining that his reliance on it was misplaced because he received an *indeterminate* sentence that does not have a fixed term or duration. (*Id.* at 3 (emphasis added).) The court goes on to explain that his maximum term was life and the Board denying parole or setting his base term at 29 years is not imposing a new or additional punishment. (*Id.*) Rather, the Board was "simply declin[ing] to exercise its ameliorative power to set a lesser term" than the life term imposed. (*Id.*)

### 3.    February 11, 2016 Petition to California Supreme Court

Petitioner filed a petition with the California Supreme Court on February 11, 2016. (Lodgment 8 [ECF 16-8].) He asserts the same arguments he raised in his prior petitions to the Superior Court and Court of Appeal, including that the new matrix is irrational because its application to him results in him serving at least 42 years, that his indeterminate sentence was fixed at 25 years, and the 29-year base term calculated on the matrix results in him serving an excessive sentence. (*Id.* at 8, 12, 16-18, 21-22, 24-25, 32-37.[8]) In addition to the same attachments he submitted with his Superior Court and Court of Appeal petitions, Petitioner also includes the Superior Court and Court of Appeal decisions. The California Supreme Court summarily denied the petition on April 27, 2016.

---

[8] The Court references the CM/ECF pagination for Lodgment 8 [ECF 16-8].

### 4.    April 22, 2018 Petition to Superior Court

Petitioner's next petition is not filed until April 22, 2018[9] and he files it with the San Diego Superior Court.  (Lodgment 10 [ECF 16-10].)  Respondent refers to this petition as the first in Petitioner's second round of petitions.

In this petition, he states that he is "challeng[ing] the constitutionality of exceeding the fixed base term and adjusted base term of life serving Petitioner which continues confinement in violation of the" 14th Amendment and the constitutionality of the "limits of the [B]oard's purview beyond the fixing of the base and adjusted base terms of indeterminate term serving prisoners." (*Id.* at 4, 9.[10])  He explains that his base term was fixed at 29 years and that base term has expired.  (*Id.*)  Although not entirely clear, it appears he is again arguing that he was entitled to a fixed sentence under the Determinate Sentencing Law and that sentence was the maximum period of time that was constitutionally proportionate to his crime.  (*Id.* at 5-6.)  However, he does assert at one point that he "is not challenging how the base term was fixed, although the rationale of its fixing by the new matrix does not reflect what the statute provides." (*Id.* at 7.)  He seems to again be arguing that a fixed term for his crime is required under the Determinate Sentencing Law and that the Board is exceeding its jurisdiction by keeping him in custody beyond that fixed term.  (*Id.* at 6-7.)  He again attaches as an exhibit, and he references in the petition, the September 2, 1975 Chairman's Directive No. 75/30 he attached to his prior petitions.  (*Id.* at 15-27.)]

The Superior Court denied the petition on May 30, 2018.  (Lodgment 11.)  The court found these were the same claims raised in his prior petitions and denied it on that basis.  (*Id.* at 1-2.)  The court explains that it is the policy of the court to deny new habeas

---

[9] The Superior Court's file stamp on this petition lacks any date, but the petition and proof of service are both dated April 22, 2018.  (Lodgment 10.)

[10] The Court references the CM/ECF pagination for Lodgment 10 [ECF 16-10].

applications based on the same grounds absent a change in the law or facts warranting reconsideration.  (*Id.* at 2.)

### 5.      June 17, 2018 Petition to the Court of Appeal

Petitioner's June 17, 2018 petition to the Court of Appeal is largely a duplication of his April 22, 2018 petition to the Superior Court.  (Lodgment 12.)  It varies only in that it includes a document titled Judicial Notice followed by a copy of the Superior Court's May 30, 2018 denial.  Petitioner states in the Judicial Notice document that his "challenge to the constitutionality of exceeding a fixed base term established by the Board has not been alleged nor heard on the merits by this Petitioner," presumably to address the Superior Court's determination that he previously raised this challenge. (ECF 16-12 at 3.[11])  Like his Superior Court petition, he argues the Board is exceeding its jurisdiction or authority in violation of Due Process by holding him beyond the 29-year base term set by the Board. (ECF 16-12 at 8-15.)  However, like the Superior Court petition, he repeats arguments made in all his earlier petitions, arguing he was entitled to a fixed sentence that could not be "refixed upwards" by the Board under the Determinant Sentencing Law.  (ECF 16-12 at 10.)  Again, like the Superior Court petition, he seems to attempt to disavow any challenge to the fixing of the 29-year base term, presumably to distinguish this petition from his prior petitions on this issue, briefly stating that he "is not challenging how the base term was fixed," but he goes on to state, "the rationale of its fixing by the new matrix does not reflect what the statute provides."  (ECF 16-12 at 11.)

The Court of Appeal denied this petition on June 27, 2018.  (Lodgment 13.)  The court noted Petitioner's prior habeas filings with the Court of Appeal, the January 4, 2016 petition (Lodgment 6, *see supra* I.C.2) and another petition.[12]  As relevant to this case,

---

[11] The Court references the CM/ECF pagination for Lodgment 12.

[12] The other petition referenced by the Court of Appeal (Case No. D070041), was a challenge to the Board's determination that Petitioner was not suitable for parole based on dangerousness.  Petitioner specifically indicates in his Petition before this Court that the present Petition has nothing to do with that petition challenging the denial of parole.

the court explained that his January 4, 2016 petition challenged his confinement for a period longer than the 29-year based term calculated by the Board as violating federal and state due process rights.  (*Id.* at 1.)  The court explicitly rejected his claim that his challenge to exceeding the fixed base term had not been alleged or heard before and found the petition was a repetitious "abuse of the writ" in denying it.  (*Id.* at 2.)  The court cites *In re Clark*, 5 Cal. 4th 750, 769 (1993), *In re Martin*, 44 Cal. 3d 1, 27 n.3 (1987) and *In re Reno*, 55 Cal. 4th 428, 496-97 (2012).

### 6.    July 3, 2018 Petition to the California Supreme Court

The July 3, 2018 petition filed with California Supreme Court duplicates the April 22, 2018 petition to the Superior Court and June 17, 2018 petition to the Court of Appeal.  (Lodgment 14.)  It varies only in that the exhibits attached to it include the state court decisions issued on his April 22, 2018 and June 17, 2018 petitions, (ECF 16-14 at 37-38, 41-50, 76-77, and 80-91[13]), and declarations[14] from Petitioner. (ECF 16-14 at 39-40, 78-79.)  In the declaration, he asserts that the fixing of the base term and exceeding that base term are wholly separate matters and argues that he has never challenged exceeding the base term.  (ECF 16-14 at 39-40 and 78-79.)

The California Supreme Court summarily denied the petition on November 14, 2018 without citation to any cases.  (Lodgment 15.)

### D.    Federal Petition

The Petition currently before the Court was filed on December 20, 2018.  (ECF 1.)  Although discussed more fully below in analyzing the issues raised in the Motion to Dismiss, in short, Petitioner challenges "exceeding the base term and continued

(Petition at 5.)  Additionally, neither Respondent nor Petitioner has relied on that petition here with regard to the statute of limitations and, as noted below, (*see infra* II.A.3), the period this petition was pending before the Court of Appeal would have no effect on the calculation of the statute of limitations because it had already expired.

[13] The Court references the CM/ECF pagination for Lodgment 14.

[14] Two copies of the same undated declaration are attached.

retention" beyond the 29-year base term set by the Board.  (*Id.* at 4-21.)  He appears to argue he was entitled to release at the conclusion of his 29-year base term because indeterminate sentences are prohibited under the Determinate Sentencing Law.  (*Id.* at 4-6, 10-11, 16-23.)  In essence, he argues that at some point his indeterminate 25-to-life sentence for first-degree murder became a determinate sentence of either 25 years or 29-years and he has been in custody more than 29 years.  (*Id.*)

Respondent characterized the Petition has containing two challenges, one based on Petitioner being in custody more than the base term and one challenging the calculation of Petitioner's base term to be 29 years.[15]  This is understandable because, although the Petition disavows any claim based on the calculation it also states the calculation was wrong.  However, as explained below, Petitioner's Opposition makes clear he is not claiming in this Petition that his base term calculation was wrong, only that he is entitled to a determinate sentence, at the latest, the 29-year base term.  (Opp'n at 2, 4-6, 8.)

### E.    Base Terms

As summarized above, Petitioner's base term was set at 29 years at his Hearing even though he was found not suitable for parole.  "[T]he base term is established 'solely on the gravity of the base offense, taking into account all of the circumstances of that crime.'"  *Pearson v. Muntz*, 639 F.3d 1185, 1188 (9th Cir. 2011) (citing Cal. Code Reg. tit. 15 § 2282(a)).  At the time of Petitioner's Hearing,[16] the Board used a matrix in the regulations to calculate a prisoner's base term.  *See In re Butler*, 4 Cal. 5th 728, 734-736, 734 (2018) (citing Cal. Code Regs., tit. 15, § 2403(a)); *see also* Cal. Code Regs., tit. 15, §

---

[15] Mot. at 5-7 (addressing untimeliness of challenge based on calculation of 29-year base term), 8-9 (addressing lack of federal habeas jurisdiction for challenge base on calculation of 29-year base term under California law), 7-8 (addressing untimeliness of challenge based on being held beyond base term) and 9-10 (addressing procedural default of challenged based on being held beyond the base term).

[16] "[B]ase terms no longer play a defined role in determining the release day for any inmate sentenced to an indeterminate sentence."  *In re Butler*, 4 Cal. 5th at 738, 742 (2018).

2403(b).  For those convicted of murder, like Petitioner, the matrix provided causes of death on one axis and descriptions of the relationship to the victim on the other with the base term based on the intersection of the two.  *Id; see also* § 2403(b).  The intersection then provided an upper, middle, and lower term with the middle as the default, upper for aggravating circumstances and lower for mitigating circumstances.  *Id.* at 734-35.  The Hearing transcript reflects the Board looked to the first-degree murder matrix with no prior relationship with the victim and no aggravation or mitigation in calculating a base term of 29 years. (Lodgment 3 at 26.)

At the time of Petitioner's January 9, 2015 hearing, California regulations only required the Board to determine a base term for a prisoner that had been found suitable for parole, but under a December 2013 settlement agreement, the Board was calculating base terms even for inmates, like Petitioner, that had not been found suitable for parole. *In re Butler*, 4 Cal. 5th 728, 734-736, 742  (2018) (citing Cal. Code Regs., tit. 15, § 2403(a)).  An inmate was still not entitled to release at the conclusion of the base term unless the inmate had already been found suitable for parole.  "[B]ase term calculations were designed to set forth an inmate's minimum sentence." *Id.* at 746.  For those, like Petitioner, that had not been found suitable for parole, the base term  "had the salutary rehabilitative effect of informing each inmate of his or her earliest possible release date, *if found suitable for parole*." *Id.* at 742 (emphasis added).  Inmates remained ineligible for release until found suitable for parole. *Id.* at 745 ("The Board may not . . .  release an inmate until the individual no longer poses a threat to 'public safety' regardless of any base term calculation."); *see also Pearson*, 639 F.3d at 1188 n. 3.

## II.    DISCUSSION

Respondent moves to dismiss the Petition arguing it is untimely, procedurally defaulted, and fails to allege a federal constitutional question.  The Court addresses each below.

///

///

## A. One-Year Statute of Limitations

### 1. Applicable Law

The federal Antiterrorism and Effective Death Penalty Act of 1996 ("ADEPA") establishes a one-year statute of limitations for filing a federal habeas corpus petition. 28 U.S.C. §2244(d)(1). There are four possible start dates for ADEPA's statute of limitations under § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>     (D) *the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.*

§ 2241(d)(1) (emphasis added). As explained below, (II.A.3), Petitioner's claim is subject to subsection (D).

The statute of limitations may also be subject to both statutory and equitable tolling. § 2244(d)(2); *Holland v. Florida*, 560 U.S. 631, 645 (2010) (finding AEDPA's statute of limitations subject to equitable tolling).

### a) Statutory Tolling

Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). State habeas petitions filed after the statute of limitations period ends do not revive a limitations period that has already ended before the state petition was filed. See Ferguson

v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit re-initiation of the limitations period that has ended before the state petition was filed.")

### b) **Equitable Tolling**

AEDPA's statute of limitations is also subject to equitable tolling. *Holland*, 560 U.S. at 645. "To be entitled to equitable tolling, [Petitioner] must show, '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented him from filing." *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) Equitable tolling is unavailable in most cases, and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

### 2. **Parties' Positions**

In the Motion to Dismiss, Respondent addresses two different issues as separate claims: (1) a challenge to the Board's calculation of a 29-year base term and (2) a challenge to remaining in custody beyond that 29-year term. Respondent argues both claims were filed beyond AEDPA's statute of limitations – 751 days late for a claim based on the calculation of the base term and 471 days late as to incarceration beyond the 29-year base term. However, because Petitioner's Opposition to the Motion explicitly indicates that Petitioner is not challenging the calculation of the base term, only being held beyond that term, (Opp'n. 2, 4-6, 8), the Court only summarizes Respondent's calculation of the statute of limitations for a claim based on being in custody beyond the 29-year base term.[17] As to this issue, Respondent argues the statute of limitations started on September 5, 2016, the day after Petitioner had served 29 years on his life term, and

---

[17] The Court notes however that any claim based on the Board decision, including the calculation of the 29-year base term, is clearly also barred by AEDPA's statute of limitations because it would have started on May 9, 2015 and expired in 2017 even with the benefit of statutory tolling; and the Petition was not filed until December 24, 2018.

expired one year later on September 4, 2017, more than a year before the federal Petition was filed. Respondent explains that Petitioner knew on May 9, 2015, when the January 9, 2015 Board decision became final, that the Board was applying a 29-year base term. Respondent argues that at that point, Petitioner simply had to add 29 years to September 4, 1987 (the date he began serving his life sentence for first-degree murder) to discover he would serve 29 years on his life sentence on September 4, 2016. AEDPA's statute of limitations began running the next day and expired on September 4, 2017. Respondent argues there is no statutory tolling for the later state petitions, filed in 2018 (*see supra* I.C.4-6), because the statute of limitations had already expired, and there is no basis for equitable tolling.

In his Opposition, Petitioner asserts "there are no statutory or other specific time limits for filing a petition for writ of habeas corpus" and there is "no AEDPA statute of limitations." (Opp'n at 5, 7.) He also appears to argue the statute of limitations was not triggered until the 29-year base term was exceeded by a full year. Petitioner agrees that he "began serving his 25 years to life term of imprisonment on or about September 4, 1987" and that "the 29th year was September 4, 2016." (Opp'n at 6.) However, he seems to assert that the statute of limitations was not triggered until "Sept. 3, 2017 one day before the 30th year began which is when the 29th year exceeded." (Opp'n. at 6.)

In Reply, Respondent notes there is no authority supporting Petitioner's claim that the statute of limitations did not start until he had served 30 years in prison rather than 29 years. (Reply at 2-4.) Respondent reiterates that one day after Petitioner served 29 years, his incarceration exceeded the base term and he knew on that date that his incarceration exceeded the 29-year base term. Additionally, Respondent explains that even if the statute of limitations was not triggered until Petitioner was incarcerated for 30 years as he argues, his federal Petition was still untimely because a year passed before he filed his federal Petition and he was not entitled to statutory tolling for any of the 2018 state court petitions because all of them were denied as successive. (Reply at 3 (citing *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).)

### 3. Analysis

Petitioner's assertion that there is no AEDPA statute of limitations is wrong. As set forth above, there is a one-year statute of limitations applicable to the Petition. "[T]he one-year limitations period applies to 'all applications for writ of habeas corpus' under § 2254, including those challenging state administrative actions." *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

The start date for the statute of limitations for this Petition is governed by § 2244(d)(1)(D). *Id.* at 1171-72 (citing *Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2004) and discussing *Redd v. McGrath*, 343 F.3d 1077, 1085 (9th Cir. 2003)). "[W]hen a habeas petitioner challenges an administrative decision affecting the 'fact or duration of his confinement,' AEDPAs one-year statute of limitations runs from when the 'factual predicate' of the habeas claims 'could have been discovered through the exercise of due diligence." *Id.* (quoting § 2244(d)(1)(D)). A challenge based on exceeding the proper term of confinement is subject to §2244 (d)(1)(D) with the factual predicate being not being released when they allege they should have been.[18] *See Murphy v. Espinoza*, 401 F. Supp. 2d 1048, 1052 (C.D. Cal. 2005) ("Under Section 2244(d)(1)(D), petitioner was, or with the exercise of due diligence, should have been aware of the factual predicate of this claim no later than . . . the date he believes his sentence should have expired"). Section 2254(d)(1)(D) applies to Petitioner's claim that he is being incarcerated in excess of the 29-year base term.

Under § 2254(d)(1)(D), the factual predicate of Petitioner's claim is his incarceration in excess of the 29-year base term. AEDPA's statute of limitations began when he was in custody in excess of 29 years. *See Hudson v. Curry*, Case No. 06-03716 SI, 2007 WL 1430031, at *1-2 (N.D. Cal. May 14, 2007) (statute of limitations was triggered when petitioner remained in custody beyond date he alleged he should have

---

[18] To the extent it could be construed as a challenge to the Board's decision, it is also subject to § 2244(d)(1)(D). *Redd*, 343 F.3d 1084-85.

been released); *Lang v. Hernandez*, Case No. CV 06-4927 RGK (JC), 2008 WL 8114263, at *7-8 (C.D. Cal. March 31, 2008) (same); *Butler v. Hill*, Case No. 2:13-cv-00567 LKK KJN P, 2013 WL 5799016, at *2-3 (E.D. Cal. Oct. 28, 2013) (same); *Singleton v. Curry*, Case No. C 06-6234 SI, 2007 WL 1068227, at *1-2 (N.D. Cal. April 10, 2007) ("The limitations period clock starts ticking when the breach occurs, and here that was when the allegedly agreed-upon date for release arrived and [the petitioner] remained in prison"); *Lara v. Curry*, Case No. C 06-7149 MHP, 2010 WL 986625, at *1-2 (N.D. Cal. March 17, 2010) ("The limitations period clock started ticking when . . . the allegedly agreed-upon date for release arrived . . . and [the petitioner] remained in prison). Although this issue arises more commonly when petitioners assert they have completed a specific sentence they were promised at sentencing,[19] as in the cases cited above, the same reasoning applies to Petitioner's challenge based on being incarcerated in excess of the 29-year base term. Petitioner knew the factual predicate of his claim no later than the day he remained in custody beyond 29 years.

Petitioner asserts that the 29-year base term was not exceeded until September 3rd or 4th of 2017 because that was the day before the 30th year began. (Opp'n at 3 ("His 29 year base term would expire on or about September 4, 2017"), 6.) However, there is no dispute that Petitioner's 25-to-life term for first-degree murder commenced on September 4, 1987. Petitioner's Legal Status Summary indicates that his life term start date was September 4, 1987. (Lodgment 2.) Petitioner indicates the same in his Opposition to the Motion. He states that he "began serving his 25 years to life term of imprisonment on or

---

[19] Petitioner's claim is unique in that it challenges not being released at the end of a base term even though he was not entitled to release at the end of that base term because he was not found suitable for parole. As explained above, completion of a base term is not itself sufficient for release. (*See supra* I.E.) Rather, to be eligible for release, a person in custody must have completed the base term for their particular offense *and* be found suitable for parole. *See Pearson*, 639 F.3d at 1188 n. 3 ("a prisoner may end up serving more than the term calculated by the Board once he is found suitable for parole.").

about September 4, 1987." (Opp'n at 6.[20])  The statute of limitations ran one year later on September 4, 2017.  Petitioner does not cite, and the Court can find no authority for, delaying the start of the statute of limitations an additional year, as Petitioner asserts. Additionally, to the extent Petitioner is attempting to calculate the start of the statute of limitations from the date he exhausted his claim in state court, (ECF 22 at 11), that assertion is also without merit.  *Redd*, 343 F.3d at 1083 (quoting *Burger v. Scott*, 317 F.3d 1133, 1138(10th Cir. 2003) ("Congress did not draft the federal limitations period to begin running only at the end of a particular state's exhaustion process.  Instead, the statute is clear that the limitations period starts from the latest of four specific dates.").

The statute of limitations under 2244(d)(1)(D) was triggered as soon as Petitioner was in custody beyond the date he argues he should have been released.  Section 2244(d)(1) requires the statute of limitations run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  "[T]he 'factual predicate' of a petitioner's claims constitutes the 'vital facts' underlying those claims."  *McAleese v. Brennan*, 483 F.3d 206, 214 (9th Cir. 2007).  Here, the vital facts were: (1) setting the 29-year base term—known to Petitioner when the Board's decision became final; and (2) remaining in custody—known to Petitioner when he remained in custody after serving 29 years.[21]  When Petitioner

---

[20] Although there is some variation in the date Petitioner asserts he began his life term in various filings in the record, he consistently indicates his life term for first-degree murder began in September 1987.  (Pet. at 2 ("25 years to life term started September 9, 1987"), 4 ("indeterminate term of imprisonment began approximately September 9, 1987"). Given the Petition was filed well beyond the statute of limitations, this variance by a few days is of no consequence to the Court's determination the Petition is untimely.

[21] Arguably, Petitioner knew the factual predicate even earlier because he knew when the Board issued its decision that his base term was set at 29 years and he knew he would not be released after serving 29 years because he had been found unsuitable for parole and the Board determined he would not receive another hearing for five years.  Five years after the January 9, 2015 denial was well beyond 29 years.  However, the Court relies on the later start date because, as explained above, it is in line with claims similar to

16

knew he was still in custody after 29 years on the first-degree murder conviction, he knew the vital facts for his claim that he was being held beyond the base term. Accordingly, he knew the factual predicate of his claim on September 5, 2016 and that is when AEDPA's statute of limitations started under § 2244(d)(1)(D). Absent statutory or equitable tolling, it expired on September 4, 2017.

Petitioner is not entitled to any statutory or equitable tolling. As described in detail above, Petitioner had no state petitions pending during this period. (*See supra* I.C.3-4.) Petitioner's first three state petitions had all been denied by the time AEDPA's statute of limitations started, (*see supra* I.C.1-3), and the three later state petitions, (*see supra* I.C.4-6), were filed after the statute of limitations has expired. Petitioner's final three state petitions were filed in 2018, the earliest more than seven months after AEDPA's statute of limitations had already expired. Because they were all filed after the statute of limitations has already expired, they do not toll or restart AEDPA's statute of limitations. *Ferguson*, 321 F.3d at 823 ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed"); *see also Ford v Gonzalez*, 683 F.3d 1230 1237 n.4 (9th Cir. 2012) (citing *Ferguson*, 321 F.3d at 823 to conclude a federal petition was time-barred despite the filing of a state petition after expiration of AEDPA's statute of limitations). Petitioner is not entitled to statutory tolling.

Respondent has asserted in the Motion that Petitioner is also not entitled to equitable tolling and Petitioner has not provided any basis for equitable tolling in his Opposition to the Motion to Dismiss. This alone is sufficient to preclude equitable tolling. Additionally, there is no basis in the Petition to suggest Petitioner is entitled to equitable tolling at any point, but certainly not during the period the statute of limitations

Petitioner's that involve an anticipated date of release (even when incorrect) and it is the latest possible start date for the statute of limitations. In this respect, it gives Petitioner every benefit of the doubt and the Petition is still time barred.

was running.[22]  Given the absence of any basis for it in Petitioner's Opposition to the Motion to Dismiss, particularly when it was specifically raised by Respondent, or in his Petition, the Court finds Petitioner is not entitled to equitable tolling either.

"[T]he factual predicate of the claim . . . could have been discovered through the exercise of due diligence" no later than September 5, 2016. § 2254(d)(1)(D).  On that date Petitioner knew, or through the exercise of due diligence should have known, that he was in custody in excess of the 29-year base term.  AEDPA's statute of limitations began on September 5, 2016 and expired on September 4, 2017.  Petitioner did not file his federal Petition until December 20, 2018, more than 15 months later.

The Court **RECOMMENDS** Respondent's Motion to Dismiss be **GRANTED** and the Petition[23] dismissed as barred by AEDPA's statute of limitations.

### B.    Procedural Default

The Court need not reach the procedural default argument because the Petition is time-barred by AEDPA's statute of limitations and should be dismissed on that basis.[24]

---

[22] The Petition does mention Petitioner was receiving care in 2015, but there is nothing suggesting this would have justified equitable tolling even if it had occurred during the relevant time period.

[23] The only claim asserted in the Petition is based on Petitioner being held in excess of the 29-year base term.  (Opp'n at 2 (disclaiming any other basis), 4 ("Petitioner has made only one claim for relief for exceeding the base term and continued retention"), 8.)  As set forth above, Petitioner has explicitly disclaimed any claim based on the calculation of the 29-year base term.  Accordingly, the only claim in the Petition is based on being held in excess of the 29-year base term and any claim on that basis is time-barred.

[24] The Court additionally notes that if the district judge does not dismiss the Petition as time-barred by AEDPA's statute of limitations, the procedural default issue could be deferred and considered in conjunction with a merits review.  *See Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same."); *see also Newsom v Yates*, No. 10cv746 WQH-BGS, 2011 WL 1004705, at *3 ("[R]eserving decision on Respondent's procedural default contentions until after Respondent answers the petition."); *but see Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (explaining that

However, should the district court elect to additionally, or in the alternative, reach the issue, the Petition should also be dismissed as procedurally defaulted.[25]

### 1. Applicable Law

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin*, 562 U.S. 307, 315 (2011) (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). "[A]bsent showings of 'cause and prejudice,' federal habeas relief will be unavailable when (1) 'a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Id.* at 316 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977) and *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) *modified on other grounds by Martinez v. Ryan*, 566 U.S. 1, 9 (2012)) (internal citations omitted).

### 2. Parties' Positions

Respondent argues Petitioner's claim challenging being held in excess of the 29-year base term should be dismissed as procedurally defaulted because the California Supreme Court decision relied on an adequate and independent state procedural ground in denying relief. Specifically, the court denied relief based on the petition being successive. (Mot. at 9-10; Reply at 5-6.) Petitioner does not challenge the adequacy or independent of the bar and does not seem to argue cause or actual prejudice to excuse the bar, although he seems to argue the procedural default resulted from a

---

while procedural default issue must not "invariably be resolved first" ordinarily they should be). Respondent has preserved the procedural default by raising it at the earliest possible time and, Respondent could renew this basis for dismissal to allow the court to decide if a decision on the merits or the procedural default analysis provide will be most efficient.

[25] In this respect, if either party objects to the undersigned recommendation, those objections should be filed as dictated below. (III.)

mischaracterization of his claim in the Superior Court's December 17, 2015 decision. (Opp'n at 8-9.) He states that denial of his claim based on procedural default will result in a fundamental miscarriage of justice. (*Id.* at 10.) Additionally, Petitioner argues the California Supreme Court did not clearly and expressly rest its judgment on a state procedural bar. (*Id.* at 10.)

### 3. Analysis

#### a) State Procedural Bar Applied

The opinion of the last state court rendering a judgment in the case must "'clearly and expressly' state that its judgment rests on a state procedural bar." *Thomas v. Goldsmith*, 979 F. 2d 746, 749 (9th Cir. 1992) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)). "Where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *see also Thomas v. Lewis*, 945 F.2d 1119, 1122 (9th Cir. 1991).

Here, the California Supreme Court's November 14, 2018 denial states only that the petition for writ of habeas corpus is denied without citation to any cases. Accordingly, the Court looks through the California Supreme Court's silent denial to the California Court of Appeal's denial as the last reasoned decision. *Ylst*, 501 U.S. at 804 (explaining that courts should "look through" unexplained orders "to the last reasoned decision."); *see also Curiel v. Miller*, 830 F.3d 864, 870 (9th Cir. 2016) (en banc) (quoting *Ylst*, 501 U.S. at 802-06) ("When at least one state court has rendered a reasoned decision, but the last state court to reject a prisoner's claim issues an order 'whose text or accompanying opinion does not disclose the reason for the judgment,' we 'look through' the mute decision and presume the higher court agreed with and adopted the reasons given by the lower court.") and *Bucci v Busby*, No. 2:11-cv-3147 GEB KJN P, 2014 WL 4249669, at *12 (E.D. Cal. Aug. 27, 2014) (looking through California Supreme Court's silent denial to Court of Appeal's application of successive bar). There is also nothing in the record indicating that the Supreme Court silently ruled on the merits rather than the

procedural bar imposed by the Court of Appeal. As noted above, the petition to the California Supreme Court largely duplicates the petition to the Court of Appeal. (*See supra* I.C.6.) Additionally, there were no orders for additional briefing or any indication from the Supreme Court that they elected to take up and silently deny the petition on the merits rather than agreeing with the Court of Appeal's denial based on a procedural bar.

There is no question that the Court of Appeal's November 14, 2018 decision rests on California's state procedural bar on successive petitions. (Lodgment 13.) After summarizing Petitioner's prior state habeas petitions filed with the Court of Appeal, the opinion is explicit in finding "[h]is repetitious presentation of claims is an abuse of the writ." (*Id.* at 2 (citing *In re Clark*, 5 Cal. 4th 750, 769 (1993).) To the extent the court's explicit statement that the petition is repetitious is not in itself sufficient to convey the court is relying on this state bar, the court's citation of *In re Clark* makes it clear. The cited portion of *Clark* addresses successive petitions and, as explained in more detail below, citation to this portion of *Clark* is an imposition of California's bar on successive petition. (*see infra* II.B.3.b).) It is clear that the Court of Appeal declined to address Petitioner's claim because he failed to meet a state procedural requirement.

### b) State Bar is Independent and Adequate

As noted above, "[a] federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Walker*, 562 U.S. at 315.

Once the state asserts a state procedural bar, as Respondent has done here, the burden shifts to Petitioner "who must assert 'specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule.'" *Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018) (quoting *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003)); *see also Trieu v. Fox*, No. 17-55265, 764 Fed Appx 624, 624 (9th Cir. March 2, 2019) ("[B]ecause the state properly raised this affirmative defense and [the petitioner] did not put its adequacy

at issue, the bar applies to this case."). The burden shifts back to the state if the petitioner meets this burden. *Williams*, 908 F.3d 546, 577. Here, Respondent has clearly asserted the state procedural bar on successive petitions and Petitioner has failed to put the adequacy of the bar at issue.

Respondent has identified Petitioner's multiple state petitions and the state court's orders on those petitions, including the Court of Appeal's June 27, 2018 denial that specifically invokes California's well-established bar on successive petitions with citation of *In re Clark*. (Lodgment 13 at 2.) "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker*, 562 U.S. at 316 (quoting *Kindler*, 130 S. Ct. at 618); *see also La Crosse*, 244 F.3d at 704 ("To be 'adequate,' the state procedural rule must be 'strictly or regularly followed' and 'consistently applied'"). As discussed briefly above, the citation of *In re Clark* is an indication the court is imposing the state's bar on successive petitions. Additionally, numerous district courts to consider the issue have found the same as to this citation. *Trieu*, 764 Fed. Appx. at 624 (recognizing *In re Clark* citation as state's procedural bar against successive petitions); *Almeida v. Lewis*, No. 1:12-cv-00793 MJS (HC), 2014 WL 2979458, at *12-13 (E.D. Cal. July 1, 2014) (relying on citation of *In re Clark*, 5 Cal. 4th 750, 767-69 as successive petition bar that is firmly established and regularly followed); *Briggs v. State*, Case No. 15-cv-05809-EMC, 2017 WL 1806495, at *5 (N.D. Cal. May 5, 2017) (finding *In re Clark* citation is "rejection of the state habeas petition as successive."); *Bucci*, 2014 WL 4249669, at *12 (finding *In re Clark* successive bar independent and adequate state procedural bar).

This shifts the burden to Petitioner to place the defense at issue. Petitioner has not challenged the adequacy or independence of the successive bar. Accordingly, the Court "finds that *In re Clark*'s bar on successive petitions constitutes an independent and adequate state procedural ground." *Bucci*, 2014 WL 4249669 at *12. Although the Ninth Circuit has not directly addressed the issue in a published decision, numerous district courts have concluded it is an independent and adequate bar. *Bucci*, 2014 WL

4249669, at *12 (citing *Arroyo v. Curry*, No. C 07-03718 SBA (PR), 2009 WL 723877, at *5 (N.D. Cal. March 18, 2009) and *Rutledge v. Katovich*, No. C 08-5738 MMC (PR), 2012 WL 2054975, at *7 (N.D. Cal. June 5, 2012)); *Flowers v. Foulk*, No. C 14-0589CW, 2016 WL 4611554, at *4 (N.D. Cal. Sept. 6, 2016 (collecting cases) ("California's bar against successive petitions is also adequate and independent."); *Briggs*, 2017 WL 1806495, at *6; *Almeida*, 2014 WL 2979458, at *13 (finding procedural bar on successive petitions firmly established and regularly followed and upholding procedural bar); *Bigg v. Ylst*, No CIV S-04-2667-MCE-CMK-P, 2006 WL 3001175, at *2 (E.D. Cal. Oct. 20, 2006) (finding *Clark*'s bars independent since *In re Robbins*, 18 Cal. 4th 770 (1998) and successive petition bar well established and consistently applied) (citing *Siripongs v. Calderon*, 35 F.3d 1308, 1318 (9th Cir. 1994)).

Additionally, in this case, the independence of the bar is clear. "A state procedural rule constitutes an 'independent' bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling." *Cooper v. Brown*, 510 F.3d 870, 924 (9th Cir. 2007). "A state law ground is so interwoven if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed." *La Crosse*, 244 F.3d at 704 (citations omitted). The decision explicitly invokes the rule as an independent basis for its decision and it in no way depends on federal law. There is nothing in the decision suggesting the ruling is interwoven or related to any federal or constitutional ruling. In this respect, the imposition of the procedural bar is independent.

The state bar is independent and adequate. Absent an exception, the state procedural bar applies.

### c) Cause and Prejudice

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see also Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) ("[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule."). Petitioner has not demonstrated cause and prejudice.

As an initial matter, it appears from the Opposition that Petitioner is not relying on a showing of cause and prejudice to excuse the procedural default, but instead seeks relief based on the miscarriage of justice exception discussed below. (*See infra* II.B.3.d).) He states, "although Petitioner never constructively alleged cause and prejudice, but instead contends that denying federal review of his claim (where the state court failed to do) will result in a fundamental miscarriage of justice." (Opp'n at 10.) Given Petitioner seems to concede he is not attempting to show cause and prejudice, the Court finds he has not shown either based on that concession.

However, even if Petitioner is not electing to focus exclusively on the miscarriage of justice exception and intended to show cause and prejudice, he has failed to do so.

### (1) Cause

"To establish cause . . . the [petitioner] must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Davila*, 137 S. Ct. at 2065 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "A factor is external to the defense if it 'cannot fairly be attributable' to the prisoner." *Id.* "For example, 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

It appears Petitioner may be arguing the Superior Court's December 17, 2015

decision denying him relief is the cause of his procedural default.[26] (Opp'n at 8-10.) More specifically, Petitioner cites the "December 17, 2015 denial order at [page] 6 lines 9-11" and argues that this misrepresentation of the fact in the December 17, 2015 decision is the reason for the Superior Court's May 30, 2018 denial of relief. (Opp'n at 8-9.) The cited text reads "The fact that petitioner has served six years beyond his 29-year base term does not, on its own establish that his continued incarceration is excessive, or cruel and unusual punishment under the Eight Amendment." (Lodgment 5 at 6.) It appears Petitioner thinks that because the December 17, 2015 decision indicates that at that time he had served six years beyond the 29-year base term, this caused the Superior Court to decide his 2018 petition was raising the same grounds as his earlier petitions.

Assuming a Superior Court decision can be considered the cause of Petitioner's failure to comply with state procedural rules, Petitioner has still failed to show cause for the default.[27] Petitioner's assertion that two lines of the December 17, 2015 decision "infected" the "entire process for Petitioner's sought relief regarding challenge to the constitutionality of exceeding the base term" is not persuasive. (Opp'n at 9.) First, even if the Court assumes two lines of the Superior Court's December 17, 2015 decision could be considered the reason for the Superior Court's later May 30, 2018 denial of relief, this

---

[26] As noted above, it appears Petitioner is advancing this argument for purposes of showing a miscarriage of justice, however, the Court has analyzed it as to cause out of an abundance of caution.

[27] If this is a unique attempt to challenge the state court's determination that the bar applies, that is not an argument the Court can consider. *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (collecting cases) (rejecting claim that state court improperly applied a state bar and concluding that "[f]ederal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules."); *see also Bradford v. Davis*, 923 F.3d 599, 610 n.2 (9th Cir. 2019) ("[D]istrict court erred in analyzing whether [the petitioner] met the justification requirements pursuant to California law" on timeliness); *Trieu*, 764 Fed Appx at 624-25 (Finding the court could not "review the legitimacy of" the state court's application of *Clark*'s procedural bar against successive or piecemeal litigation.").

Court is not looking to the May 30, 2018 decision, it is considering the last reasoned decision, *i.e.* the Court of Appeal's June 27, 2018 decision. (*See supra* II.B.3.a) (looking through to Court of Appeal's June 27, 2018 denial).) Second, Petitioner's cause argument ignores that Petitioner submitted a petition to the Court of Appeal in which he explicitly stated that "Petitioner's challenge to the constitutionality of exceeding a fixed base term established by the Board has not been heard on the merits by this Petitioner." (ECF 16-12 at 3.) And more significantly, the Court of Appeal acknowledges this argument and rejects it. (Lodgment 13 at 1.) Third, the Court of Appeal does not discuss or rely on either of the Superior Court decisions Petitioner relies on, but instead relies on Petitioner's prior petition to the Court of Appeal. (*Id.*) The Court of Appeal goes on to makes its own findings regarding the prior petitions, contravening the idea that the Superior Court's 2015 two-line statement somehow caused the Court of Appeal to impose a procedural bar it otherwise would not have imposed. There is simply no basis to conclude a Superior Court decision issued in 2015, with three intervening state court decisions and four intervening petitions from Petitioner, caused the Court of Appeal to impose a procedural bar and that it is the reason Petitioner's petition was successive. Petitioner has not shown cause.

### (2)    **Prejudice**

When, as here, a petitioner fails to show cause for the default, the "court need not consider whether he suffered actual prejudice." *Roberts v. Arave*, 847 F.2d 528, 530 n. 3 (9th Cir. 1988) (citing *Engle v. Issac*, 456 U.S. 107, 134 n. 43 (1982)); *Smith v. Murray*, 477 U.S. 527, 533 (1985). However, should the district judge elect to reach the issue, Petitioner has also not shown prejudice.

Petitioner must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. "'[P]rejudice' is actual harm resulting from the alleged constitutional violation." *Thomas*, 945 F.2d at 1123 (quoting *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984)). Showing "actual prejudice" to overcome procedural default "requires the petitioner to establish 'not merely that the errors at trial created a

possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bradford*, 923 F.3d at 613 (quoting *Murray*, 477 U.S. at 494).

Petitioner has not alleged an underlying federal violation. Although Petitioner labels his claim a violation of Due Process, that label alone cannot transform a purely state law issue into a federal one. Petitioner claims that he was entitled to release after completion of the 29-year base term because indeterminate sentences are prohibited under the Determinate Sentencing law. He is essentially arguing that despite the imposition of a indeterminate life sentence for first-degree murder, the authority given to the Board under California law to determine when or if to grant parole to life serving inmates, and the Board's finding (not challenged here) that Petitioner is not suitable for parole), that under California's Determinate Sentencing Law his indeterminate 25-to-life sentence became determinate and he was entitled to release at the end of the base term of 29 years. This is an issue of California state law. It is not a federal violation.[28] A petitioner cannot transform a state law issue into a federal one by labeling it a due process

_____

[28] The Court notes even if it were considered a federal violation, Petitioner has suffered no actual harm in not having it heard because it has no basis in fact or law. Because Petitioner was sentenced after the passage of the Determinate Sentencing Law, he was sentenced to an indeterminate life sentence under the Determinate Sentencing Law. In this respect, the passage of it did not convert Petitioner's indeterminate 25-to-life sentence into a determinate one. Additionally, the Determinate Sentencing Law did not eliminate indeterminate sentences as Petitioner argues. *See In re Butler*, 4 Cal. 5th at 745 (explaining continued use of indeterminate sentences "for a circumscribed group of offenders."). Rather, indeterminate sentences were preserved for a smaller group of offenses, like Petitioner's conviction for first-degree murder. *See id.*; *In re Dannenberg*, 34 Cal. 4th 1061, 1096 (2005) (Explaining indeterminate sentences reserved for "a much narrower category of serious crimes and offenders.") And, inmates, like Petitioner, serving indeterminate sentences are not entitled to fixed terms. *See In re Butler*, 4 Cal. 5th at 745 (discussing *In re Dannenberg*, 34 Cal. 4th at 1096 finding the same). "[A] defendant under an indeterminate sentence has no vested right to have his sentence fixed at . . . [a] period less than the maximum sentence provided by statute." *In re Dannenberg*, 34 Cal. 4th at 1097.

violation. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir.1996). Courts "cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question." *Little v. Crawford*, 449 F.3d 1075, 1083 n. 6 (9th Cir. 2006). Petitioner has not shown prejudice.

### d) Fundamental Miscarriage of Justice

As noted above, Petitioner states that rather than showing cause and prejudice, he "instead contends that denying federal review of his claim (where the state court failed to do) will result in a fundamental miscarriage of justice." (Opp'n at 10.) Petitioner then states that he "has demonstrated the unreasonable determinations of fact" in the Superior Court's December 17, 2015 decision. (*Id.*)

"[A] petitioner overcomes procedural default if he presents sufficient evidence to 'demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007) (quoting *Coleman*, 501 U.S. at 750). "To make this showing, a petitioner's case must fall within the 'narrow class of cases . . . involving extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). To pass through this "actual innocence procedural gateway," a petitioner "must show that, in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime." *Id.* (citation omitted.) "[T]enable actual-innocence gateway pleas are rare. A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Stewart v. Cate*, 757 F.3d 929, 938 (9th Cir. 2014).

As is evident from a reading of this standard, this exception does not apply here. Petitioner is not attempting to show, based on new evidence, that no reasonable jury would convict him of first-degree murder. The claim itself merely asserts that under California law his indeterminate life sentence became determinate at some point after he

was sentenced, and he should be released.  His innocence is not at issue.  Even the more analogous, but completely inapplicable, standard for death penalty sentences would not apply.  It requires a petitioner show "by clear and convincing evidence that, but for a constitutional error no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Dretke v. Haley*, 541 U.S. 386, 393 (2004).  Even assuming this standard could be extended to a noncapital sentence, it would not apply because Petitioner is not challenging the sentence imposed when he was convicted of first-degree murder.  As explained in more detail below, this exception simply does not extend to the type of claim Petitioner is asserting.

"[A]lthough the actual innocence exception applies in the capital sentencing context, neither the Supreme Court nor the Ninth Circuit has determined whether that exception applies to noncapital sentences" like Petitioner's 25-to-life sentence.  *Sivak v. Christensen*, Case No 1:16-cv-00189-BLW, 2018 WL 4643043, *7 (D. Idaho Sept. 27, 2018) (citing *Dretke*, 541 U.S. at 393-94 (2004) and *Marrero v. Ives*, 682 F.3d 1190, 1195 (9th Cir. 2012)); *see also McCutcheon v. Arizona*, No CV-15-0512-PHX-PGR, 2016 WL 8257606, *6 n.10 (D. Ariz. September 29, 2016).  In *Dretke*, the Supreme Court declined to reach whether actual innocence could be extended to noncapital sentencing, and in *Marrero*, the Ninth Circuit declined to consider whether a claim of actual innocence could be asserted in noncapital sentencing for purposes of the similar escape hatch rule of §§ 2241 and 2255.  *Dretke*, 541 U.S. at 393-94 (declining to decide whether actual innocence exception should be extended to challenges of noncapital sentencing error because lower court had not addressed other non-defaulted claims first); *Marrero*, 682 F.3d at 1194-95 (noting other circuits' exceptions to the general rule that a petitioner cannot be actually innocent of noncapital sentence, but declining to endorse any because none are met).  Accordingly, the Court finds that Petitioner's claim is not eligible for the miscarriage of justice exception because his claim does not challenge his conviction or involve a capital sentence.

18CV2884 AJB (BGS)

Even assuming that the actual innocence exception could be extended to noncapital sentencing, that is not even the issue asserted here. Petitioner is not claiming his 25-to-life sentence for first-degree murder was improperly imposed based on a constitutional violation. He is arguing that as a matter of California law his indeterminate 25-to-life sentence became determinate and he is entitled to release. In this respect, the Court would not only have to find actual innocence should be extended to noncapital sentencing, a position rejected by some courts,[29] but also extend it to a challenge alleging a change in state law[30] that allegedly altered the sentence imposed following conviction. The Court declines to make these extensions because a claim of actual innocence does not make sense in this context. Unlike a petitioner that might argue that but for a constitutional error, he would not have been found eligible for the death penalty or, assuming an extension to noncapital sentencing, a sentencing enhancement, there is nothing for Petitioner to be actually innocent of that would change his indeterminate life sentence to a determinate one. Petitioner is not entitled to relief from the procedural default based on the miscarriage of justice exception.[31]

Federal habeas relief is unavailable because the state court decision relies on an independent and adequate state procedural ground and Petitioner has failed to show cause for the default or actual prejudice or a fundamental miscarriage of justice. The undersigned **RECOMMENDS** Respondent's Motion to Dismiss on this basis be

---

[29] *See Sivak*, 2018 WL 4643043, *7 (collecting other circuit decisions concluding a person cannot be actually innocent of a noncapital sentence).

[30] The Court notes, as discussed above, there has been no change in California state law that converted Petitioner's indeterminate life sentence to a determinate one. (II.B.3.c)(2) at n. 28.)

[31] Although "actual innocence, if proved serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations," Petitioner did not raise this exception with regard to the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). However, the exception would fail as an exception to the statute of limitations for the same reason; it simple does not extend to this type of claim.

**GRANTED**.

### C. Federally Cognizable

As noted above, Respondent's Motion differentiated between two separate claims in the Petition, one based on the calculation of the base term and one based on Petitioner being in custody beyond the base term. (*See supra* A.2.) In the Motion to Dismiss, Respondent seeks dismissal of a claim based on the calculation of the 29-year base term arguing that it is an issue of state law that does not rise to the level of a federal question. (Mot. at 8-9.) As discussed above, Petitioner has clarified in his Opposition that his Petition is not asserting a claim based on the calculation of the 29-year base term, and he is only pursuing a claim based on being held beyond the 29-year base term. Accordingly, like Respondent's argument regarding the statute of limitations on this issue, the Court need not address it.

In the Reply brief, Respondent argues that because Petitioner's challenge to his continued incarceration beyond the base term is a challenge based solely on the application of state law, the allegations are not cognizable on federal habeas review. Although Respondent is attempting to address arguments Petitioner made in the Opposition, *i.e.* that the Board has violated state laws by not releasing him, Respondent is seeking dismissal on a basis not asserted in the initial Motion at least as to the only claim Petitioner is pursuing. For this reason, the Court recommends the Court not reach this argument. However, if the Court does address it, it provides an additional ground for dismissal because, as discussed above (II.B.3.c)(2), Petitioner raises an issue only of state law.

The Court **RECOMMENDS** that if the district judge elects to reach this issue, the Motion to Dismiss be **GRANTED** on this basis as well.

## III. CONCLUSION & RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) **DISMISSING** the Petition.

**IT IS ORDERED** that no later than **February 19, 2020,** any party to his action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **February 26, 2020**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: January 29, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge

18CV2884 AJB (BGS)